

## OFFICE OF THE ATTORNEY GENERAL OF TEXAS

### AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-4517
Re: Distribution of surplus in the
Confederate Pension Fund.

We are in receipt of your letter of June 12, 1942,
relating to the above matter. We are returning herewith the
letter received from General Crenshaw which was attached to
your letter.

We quote from your request as follows:

"An attempt to equally prorate the fund among
all of the said pensioners raises the following
questions:

"1. Is said fund subject to an equal pro-
ration among said pensioners? If it is, when shall
proration be made?

"2. In equally prorating the fund among all
of said pensioners whose claims to pensions have
been established and filed, shall we take into
consideration the claims of deceased pensioners
that have been established and filed?

"For your information in answering this ques-
tion you are advised that the May 31, 1942 balance
in the fund was ,912,511.74. There will be very
little income to the fund between now and October,
when the 1942 ad valorem tax payments will begin
to come in. The payments from the fund in May were
$67,743.95. Each succeeding month the payments
will decline in keeping with the decline in the
number of pensioners. It is our estimate that at
the end of October, but before any of the new year's

Honorable George H. Sheppard, Page 2

taxes are deposited to the fund there will be a balance of approximately $721,000.00 in the fund."

You also quote from a report made by the State Auditor dated February 28, 1942, which indicates that in the last ten years approximately $1,124,987.02 have been spent in maintaining homes for Confederate men and women which sum does not include an annual administration expense of the Comptroller's Department in an approximate amount of $7,000.00 a year. You advise that it has been suggested that the surplus in the Confederate Pension Fund be used to repay the last mentioned amounts.

For the purpose of this opinion we need consider only the following provisions of the Constitution and statutory laws:

Article III, Section 51, of the Constitution of Texas, provides as follows:

"The Legislature shall have no power to make any grant or authorize the making of any grant of public moneys to any individual, association of individuals, municipal or other corporations whatsoever; provided, however, the Legislature may grant aid to indigent and disabled Confederate soldiers and sailors under such regulations and limitations as may be deemed by the Legislature as expedient, and to their widows in indigent circumstances under such regulations and limitations as may be deemed by the Legislature as expedient; . . . . . and also grant for the establishment and maintenance of a home for said soldiers and sailors, their wives and widows and women who aided in the Confederacy, under such regulations and limitations as may be provided for by law; provided the Legislature may provide for husband and wife to remain together in the home. There is hereby levied in addition to all other taxes heretofore permitted by the Constitution of Texas, a State ad valorem tax on property of seven ($.07) cents on the one hundred ($100) dollars valuation for the purpose of creating a special fund for the payment of pensions for services in the Confederate army and navy, frontier organizations and the militia of the State

of Texas, and for the widows of such soldiers serving in said armies, navies, organizations or militia; provided that the Legislature may reduce the tax rate herein levied, and provided further, that the provisions of this section shall not be construed so as to prevent the grant of aid in cases of public calamity." (Underscoring ours)

Article 6221, V. A. C. S., provides as follows:

"On the 1st day of each calendar month the Comptroller shall pay to each married veteran who is living with his wife, a pension of Fifty Dollars ($50.00) per month for as long as they both may live, and after the death of either party, then the said veteran or his widow still living shall only draw an amount equal to other veterans or their widows. To each veteran now unmarried or a widower or widow who is drawing a pension or whose application may be hereafter approved, shall be paid the sum of Twenty-five Dollars ($25.00) per month for each year, and the remainder of said pension fund (after reimbursing the General Revenue Fund for any advancement theretofore made to the Pension Fund) shall be equally prorated among all of said pensioners whose claims to pensions have been established and filed. All pensions shall begin on the first day of the calendar month following the approval of the application." (Underscoring ours)

We have been unable to find any authorities which specifically relate to your questions and are therefore relegated to a consideration of the general constructions placed on pension laws and to an interpretation of the statutes and constitutional provisions applying to our particular problems.

We find the general construction placed on pension laws to be as follows:

"The unquestioned rule is that a pension granted by public authorities is not a contractual obligation but a gratuitous allowance, in the continuance of which the pensioner has no vested rights; and that a pension is accordingly terminable at the will of the grantor, either in whole or

Honorable George H. Sheppard, Page 4

in part."  21 R. C. L., Section 7, page 242, et
seq.  See also 32 T. J. pp. 769 et seq.; 54 A. L.
R. pp. 943 et seq.; Chalk v. Darden, 47 Tex. 438.

We observe that the constitutional provision re-
lating to Confederate pensions above does not contain any
specific language controlling the distribution of the fund
collected thereunder but specifically says that "the Legis-
lature may grant aid. . . under such regulations and limi-
tations as may be deemed as expedient".  In pursuance to the
above constitutional authority the Legislature enacted Arti-
cle 6221, V. A. C. S., which contains the only provisions
now on the statutes setting forth definite directions for
paying such pensions.  Article 6221, as above set out, pro-
vides that each married veteran shall receive Fifty Dollars
per month and each unmarried veteran, widower or widow, shall
be paid the sum of Twenty-five Dollars per month and then
states "the remainder of said pension fund. . . shall be
equally prorated among all of said pensioners whose claims
to pensions have been established and filed".  This last
quoted clause does not stipulate whether such remainder shall
be equally prorated to married and unmarried veterans or
widows alike; when such proration should be calculated or
made; or whether or not the claims of deceased pensioners
should be considered in such proration.

The general rule as to indefinite provisions of
statutes is that such portions are unenforceable as is shown
by the following quotation:

"An act of the legislature, to have the force
and effect of a law, must be intelligibly expressed.
Where the terms of an act are so vague as to convey
no definite meaning to those whose duty it is to
execute it, ministerially or judicially, it is in-
operative."  59 Corpus Juris. pp. 691 et seq.  See
also 25 R. C. L. pp. 810 et seq and authorities
there cited.

The authorities indicate that such unenforceable
provisions may be separated and remaining portions of the stat-
ute enforced.

"Although an act is open to the criticism
of indefiniteness and uncertainty as to some of
its provisions, such fact will not render it void

Honorable George H. Sheppard, Page 5

for uncertainty in its more essential provisions so long as they are capable of enforcement, or in so far as the other provisions of the act are clear and definite." 59 Corpus Juris. pp. 604. See also 25 R.C.L. pp. 811 et seq. and authorities cited.

Pensions such as those under discussion are gratuitous allowances which should be definitely provided for by statute. When we observe how indefinite is the language in Article 6221 V. A. C.S. which refers to any remainder in the Confederate Pension Fund, we cannot escape the conclusion that such language must fall, although the other portions of this statute are definite and therefore enforceable.

You are therefore advised that the surplus in the Confederate Pension Fund is not subject to proration among said pensioners and that it is our opinion that no payments may be made from said fund except those specifically set out in the statutes relating thereto. This answer precludes the necessity for a reply to your other questions.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Alfred F. Herbelin
Alfred F. Herbelin
Assistant

AFH:mp

APPROVED AUG 11, 1942
Gerald C. Mann
ATTORNEY GENERAL OF TEXAS



APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN